UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF NEW YORK

---------------------------------------------------------x
                             :

INVISTA S.à.r.l., INVISTA Technologies   :
S.à.r.l., and INVISTA North America S.à.r.l., :
                             :

          Plaintiffs,         :

                             :   No. 08 CV 7270 (BSJ/DCF)
          v.             :
                             :   ECF Case

E.I. Du Pont de Nemours and Company and  :
Rhodia S.A.,                     :

          Defendants.      :
                             :
---------------------------------------------------------x

## <u>MEMORANDUM OF LAW IN SUPPORT OF DEFENDANT RHODIA S.A.'S MOTION TO DISMISS FOR LACK OF SUBJECT MATTER JURISDICTION</u>

Jonathan L. Greenblatt
Henry Weisburg
Neil H. Koslowe
Paula Howell
SHEARMAN & STERLING LLP
599 Lexington Avenue
New York, NY 10022-6069
Telephone: (212) 848-4000
Facsimile: (212) 848-7179
jgreenblatt@shearman.com

Attorneys for Defendant
Rhodia S.A.

# TABLE OF CONTENTS

**Page**

TABLE OF AUTHORITIES ........................................................................................ ii

INTRODUCTION AND SUMMARY ........................................................................1

STANDARD OF REVIEW ........................................................................................4

THE ALLEGATIONS IN INVISTA'S COMPLAINT ..............................................5

ARGUMENT ............................................................................................................6

      I.     THE COURT LACKS SUBJECT MATTER JURISDICTION BECAUSE INVISTA DOES NOT HAVE A COGNIZABLE CLAIM UNDER THE LANHAM ACT .................................................................................... 6

           A.     Invista's Extraterritorial Claims Fall Outside The Lanham Act ................ 7

           B.     Invista Has No Cognizable Unfair Competition Claim Under Section 44 ........................................................................................ 11

           C.     Invista Has No Cognizable Claim Under Section 43 ............................... 13

      II.    THE COURT SHOULD NOT EXERCISE SUPPLEMENTAL JURISDICTION ................................................................................. 19

## TABLE OF AUTHORITIES

### CASES

*Alfred Dunhill, Ltd. v. Interstate Cigar Co.*, 499 F.2d 232 (2d Cir. 1974) ....................................13

*Am. White Cross Labs., Inc. v. H. M. Cote, Inc.*, 556 F. Supp. 753 (S.D.N.Y. 1983) ....................7

*Atl. Richfield Co. v. Arco Globus Int'l Co.*, 150 F.3d 189 (2d Cir. 1998)..................................9, 10

*BP Chems., Ltd. v. Formosa Chem. & Fibre Corp.*, No 97-CV4554
    (D.N.J. May 14, 1998) ........................................................................................12

*BP Chems., Ltd. v. Jiangsu Sopo Corp. Ltd.*, 429 F. Supp. 2d 1179 (E.D. Mo. 2006)..............3, 12

*Baylis v. Marriott Corp.*, 843 F.2d 658 (2d Cir. 1988)..............................................................4, 19

*Dastar Corp. v. Twentieth Century Fox Film*, 539 U.S. 23 (2003) ...............................3, 13, 15, 16

*Demetriades v. Kaufmann*, 698 F. Supp. 521 (S.D.N.Y. 1988)...........................................4, 15, 18

*digiGAN Inc. v. iValidate, Inc.*, No. 02 CV 420, 2004 WL 203010
    (S.D.N.Y. Feb. 3, 2004) ................................................................................14, 15

*EEOC v. Arabian Am. Oil Co.*, 499 U.S. 244 (1991) ....................................................................8

*Empresa Cubana del Tobaco v. Culbro Corp.*, 399 F.3d 462 (2d Cir. 2005) ...........................2, 11

*Gmurzynska v. Hutton*, 257 F. Supp. 2d 621 (S.D.N.Y. 2003)................................................18, 19

*Gordon & Breach Sci. Publishers S.A., STBS v. Am. Inst. of Physics*, 859 F. Supp 1521
    (S.D.N.Y. 1994) ..............................................................................................18

*Grupo Gigante SA de CV v. Dallo & Co.*, 391 F.3d 1088 (9th Cir. 2004) ...................................12

*Hagans v. Lavine*, 415 U.S. 528 (1974)....................................................................................4, 19

*Hans-Jurgen Laube & Oxidwerk HJL AG v. KM Europa Metal AG*, No. 96 CV 8147,
    1998 WL 148427 (S.D.N.Y. March 27, 1998) ..................................................15

*ITC Ltd. v. Punchgini, Inc.*, 482 F.3d 135 (2d Cir. 2007)..........................................................3, 17

*Int'l Café, S.A.L. v. Hard Rock Café Int'l (U.S.A.)*, 252 F.3d 1274 (11th Cir. 2001) ........10, 11, 12

*Kemart Corp. v. Printing Arts  Research Labs., Inc.*, 269 F.2d 375 (9th Cir. 1959)....................11

*Makarova v. United States*, 201 F.3d 110 (2d Cir. 2000)...............................................................5

*Mattel, Inc. v. MCA Records*, 296 F.3d 894 (9th Cir. 2002)..........................................................11

*Monsanto Co. v. Syngenta Seeds, Inc.*, 443 F. Supp.2d 648 (D. Del. 2006) ..........................15, 16

*National Artists Mgm't Co., Inc., v. Weaving*, 769 F. Supp. 1224 (S.D.N.Y. 2003) ...................18

*Oneida Indian Nation v. County of Oneida*, 414 U.S. 661 (1974) ................................................19

*Piccoli A/S v. Calvin Klein Jeanswear Co.*, 19 F. Supp.2d 157 (S.D.N.Y. 1998)........................10

*Procter & Gamble Co. v. Colgate-Palmolive Co.*, No. 96 CV 9123, 1998 WL 788802
    (S.D.N.Y. Nov. 9, 1998) ............................................................................................................9

*Prof'l Sound Servs. v. Guzzi*, 349 F. Supp. 2d 722 (S.D.N.Y. 2004)...........................................18

*Roquette Am., Inc. v. Amylum N.V.*, No. 03 CV 0434, 2004 WL 1488384
    (S.D.N.Y. July 1, 2004) ............................................................................2, 5, 7, 8, 9

*Space Imaging Europe, Ltd. v. Space Imaging L.P.*, No. 98 Civ. 2291, 1999 WL 511759
    (S.D.N.Y. July 19, 1999) ................................................................................................4, 5

*Thomas Publishing Co., LLC v. Tech. Evaluation Ctrs., Inc.*, No. 06 CV 14212, 2007
    WL 2193964 (S.D.N.Y. July 27, 2007) ...............................................................................16

*Toho Co. Ltd. v. Sears, Roebuck & Co.*, 645 F.2d 788 (9th Cir. 1981).........................................12

*Totalplan Corp. of Am. v. Colborne*, 14 F.3d 824 (2d Cir. 1994) ...............................................2, 9

*Tubeco, Inc. v. Crippen Pipe Fabrication Corp.*, 402 F.Supp. 838 (S.D.N.Y. 1975) .........3, 14, 15

*Vanity Fair Mills v. T. Eaton Co.*, 234 F.2d 633 (2d Cir. 1956) .............................................2, 7, 9

*Williams v. Hernandez*, No. 05 CV 2420, 2006 WL 156411 (S.D.N.Y. Jan. 18, 2006) ................4

## STATUTES

11 U.S.C. § 1127............................................................................................................................18

15 U.S.C. § 1121(a) ..............................................................................................................1, 2, 4, 6

15 U.S.C. § 1125(a)(1)...................................................................................................................17

15 U.S.C. § 1126(h) .....................................................................................................................7, 8

28 U.S.C. § 1331..................................................................................................................1, 2, 4, 6

28 U.S.C. § 1367..................................................................................................................1, 19

Fed. R. Civ. P. 12(b)(1)........................................................................................................4, 5

## INTRODUCTION AND SUMMARY

This lawsuit by Invista S.à.r.l., Invista Technologies S.à.r.l., and Invista North America S.à.r.l. (collectively, "Invista")—three Luxembourg corporations—against E. I. DuPont de Nemours and Company ("DuPont") and Rhodia S.A. ("Rhodia")—a French corporation—is the latest skirmish in a long series of disputes between Invista and Rhodia over the use of technology arising from a French joint venture called Butachimie SNC, which was formed nearly 35 years ago by DuPont de Nemours (France) S.A.S. and Société de Usines Chimiques Rhône-Poulenc, predecessors of Invista and Rhodia, respectively. The Butachimie joint venture agreement documents (collectively, "JVA") call for arbitration in France of disputes arising from the joint venture, and the dispute between Invista and Rhodia in this case, like all past disputes, is the subject of an International Chamber of Commerce ("ICC") arbitration that is fully in progress in France.

The essence of the present dispute between Invista and Rhodia is Invista's claim that Rhodia misappropriated from Butachimie a butadiene-based technology known as "Gen I," which is used to produce adiponitrile ("ADN"), an intermediate chemical ingredient for the manufacture of nylon 6.6, and that Rhodia intends several years hence to build a plant in Asia to produce ADN with this technology. DuPont, DuPont de Nemours (France) S.A.S., and later Invista disclosed the Gen I technology to Butachimie and certain Rhodia entities, subject to confidentiality restrictions in the JVA. Rhodia denies Invisa's claims of misrepresentation.

Invista has invoked this Court's subject matter jurisdiction under 28 U.S.C. § 1331 (federal question), 15 U.S.C. § 1121(a) (the Lanham Act), and 28 U.S.C. § 1367 (supplemental jurisdiction). (Compl. ¶¶ 27-28.) However, the only federal question Invista raises is whether defendants have violated the Lanham Act. If Invista does not have a federal claim under the Lanham Act, the Court does not have subject matter jurisdiction under 28 U.S.C.

§ 1331 or 15 U.S.C. § 1121(a) and should not exercise supplemental jurisdiction over Invista's other claims.

        For several reasons, Invista does not have a federal claim under the Lanham Act. First, as the Second Circuit made clear in *Vanity Fair Mills v. T. Eaton Co.*, 234 F.2d 633 (2d Cir. 1956), and this Court reiterated in *Roquette Am., Inc. v. Amylum N.V.*, No. 03 CV 0434, 2004 WL 1488384 (S.D.N.Y. July 1, 2004), the Lanham Act simply does not apply to an extraterritorial dispute between two foreign rivals, such as Invista and Rhodia, over the alleged misappropriation of trade secrets from a foreign joint venture. In the words of the Second Circuit, the protections of the Lanham Act "are limited in application to within the United States" and "have no extraterritorial application." *Vanity Fair Mills*, 234 F.2d at 644. Invista's failure to allege that Rhodia's conduct has had a substantial impact on United States commerce is fatal to its Lanham Act claims. *See Totalplan Corp. of Am. v. Colborne*, 14 F.3d 824, 831 (2d Cir. 1994) (plaintiff's failure to show that defendants were U.S. citizens and that their conduct had "a substantial effect on United States commerce" is "fatal to an argument that the conduct is governed by the Lanham Act").

        Second, although Invista contends that Section 44(h) of the Lanham Act and the Paris Convention combine to grant it "a federal right to sue for acts of unfair competition and to invoke federal and state law rights and remedies in pursuing a federal cause of action in a U.S. federal court" (Compl. ¶ 93), no such right exits. The Second Circuit has held that the Paris Convention, as incorporated in Section 44(h) of the Lanham Act, does not create an independent cause of action for unfair competition. *Empresa Cubana del Tabaco v. Culbro Corp.*, 399 F.3d 462, 485 (2d Cir. 2005). Specifically, "the Lanham Act and the Paris Convention do not create a

cause of action for misappropriation of trade secrets." *BP Chems., Ltd. v. Jiangsu Sopo Corp. Ltd.*, 429 F. Supp. 2d 1179, 1189 (E.D. Mo. 2006).

Third, Invista does not have a claim under Section 43(a) of the Lanham Act. As a threshold matter, Section 43(a) authorizes a civil action only "in connection with any goods or services, or any container for goods." Invista is not complaining about customer confusion regarding any "goods," "services," or a "product," nor is Invista complaining about any "container for goods." Rather, Invista alleges that Rhodia has misappropriated a *technology*, namely, Gen I, that is used to *make* a "product," namely, ADN. A dispute over a technology for making a product is not actionable under Section 43(a) of the Lanham Act. *Tubeco, Inc. v. Crippen Pipe Fabrication Corp.*, 402 F.Supp. 838, 848 (S.D.N.Y. 1975). Therefore, Invista cannot satisfy the threshold requirement for a Section 43(a) claim.

Invista's attempt to ground a Section 43(a) claim on its allegation that Rhodia is passing off Invista's Gen I technology as its own similarly fails. Section 43(a) protects the tangible good sold in the market—for example, ADN—but not the intellectual property—such as Gen I—that the good may embody. *Dastar Corp. v. Twentieth Century Fox Film*, 539 U.S. 23, 31–32 (2003) ("as used in the Lanham Act, the phrase 'origin of goods' is in our view incapable of connoting the person or entity that originated the ideas or communications that 'goods' embody or entail").

Furthermore, a necessary predicate to the assertion of a claim under Section 43(a)(1)(A) of the Lanham Act (false designation of origin) is the existence of a "mark" entitled to protection. *See ITC Ltd. v. Punchgini, Inc.*, 482 F.3d 135, 154 (2d Cir. 2007). Invista does not allege that the Gen I technology is a protected trademark. Accordingly, Invista cannot assert a claim under Section 43(a)(1)(A).

Finally, Invista has no claim under Section 43(a)(1)(B) of the Lanham Act (false advertising). Here, too, Invista's claim fails because Invista is complaining about Rhodia's statements about a technology—Gen I—and not "goods" or "services." Moreover, to meet the requirements of Section 43(a)(1)(B), a plaintiff must allege that the defendant made false statements that were used "in commerce." *See Demetriades v. Kaufmann*, 698 F. Supp. 521, 524 (S.D.N.Y. 1988). Here, Invista has not alleged that Rhodia made any statements that were used in commerce. Consequently, Invista has failed to satisfy the requirements for a claim under Section 43(a)(1)(B) of the Lanham Act.

Because Invista does not have a cognizable federal claim under the Lanham Act, the Court lacks subject matter jurisdiction under 28 U.S.C. § 1331 or 15 U.S.C. § 1121(a). And because the Court lacks subject matter jurisdiction over Invista's purported Lanham Act claims, the Court should decline at this pleading stage of the case to exercise supplemental jurisdiction over Invista's non-federal claims. *Hagans v. Lavine*, 415 U.S. 528, 543 (1974); *Baylis v. Marriott Corp.*, 843 F.2d 658, 664 (2d Cir. 1988).

### STANDARD OF REVIEW

In reviewing Rhodia's motion to dismiss for lack of subject matter jurisdiction under Federal Rule of Civil Procedure 12(b)(1), this Court "must accept as true all material factual allegations in the complaint," but should "not draw inferences from the complaint favorable to plaintiffs." *Williams v. Hernandez*, No. 05 CV 2420, 2006 WL 156411 at *2 (S.D.N.Y. Jan. 18, 2006) (internal punctuation and citation omitted). "No presumptive truthfulness attaches to the complaint's jurisdictional allegations." *Space Imaging Europe, Ltd. v. Space Imaging L.P.*, No. 98 Civ. 2291, 1999 WL 511759 at *1 (S.D.N.Y. July 19, 1999).

"As the party seeking to invoke the subject matter jurisdiction of the district court," Invista bears the burden of proving subject matter jurisdiction by a preponderance of the

evidence. *Roquette Am.*, 2004 WL 1488384, at *5 (internal citation omitted) (dismissing plaintiff's Lanham Act claim where subject matter jurisdiction was not sufficiently proven); *Space Imaging Europe*, 1999 WL 511759, at *1 (same). Dismissal under Rule 12(b)(1) is proper where "the district court lacks the statutory or constitutional power to adjudicate" the claims. *Makarova v. United States*, 201 F.3d 110, 113 (2d Cir. 2000).

### THE ALLEGATIONS IN INVISTA'S COMPLAINT

Invista alleges twelve causes of action against Rhodia and DuPont (Compl. ¶¶ 92-181). These causes of action are based on the following core factual allegations: on April 23, 1974, DuPont de Nemours (France) S.A.S. and Société de Usines Chimiques Rhône-Poulenc formed a joint venture called Butachimie SNC to construct and operate a facility in Chalampé, France, to manufacture ADN (Compl. ¶¶ 38–39); DuPont de Nemours (France) S.A.S. and later Invista, which purchased DuPont's interest in the joint venture from DuPont, disclosed to Butachimie the Gen I technology used to produce ADN and related trade secret information (*id*. ¶¶ 50–53); the disclosures were subject to confidentiality and use restrictions in the JVA (*id*. ¶¶ 54–58); Rhodia "gain[ed] access" to the Gen I technology and trade secrets "through Rhodia Group employees who operated or worked for the benefit of the Butachimie plant" (*id*. ¶ 53); Rhodia intends to use the Gen I technology to build an ADN plant in Asia in 2011 or 2012 (*id*. ¶¶ 77–81); and Rhodia has conspired with DuPont to misappropriate Invista's Gen I technology and trade secrets and carry out its plans (*id*. ¶¶ 82–91).

Invista alleges only two federal causes of action against Rhodia. For its first federal cause of action, against both Rhodia and DuPont, Invista alleges "unfair competition" under the Lanham Act and the Paris Convention. (Compl. ¶¶ 92–98.) According to Invista, DuPont and Rhodia have engaged in unfair competition "[b]y engaging in acts of misappropriation and wrongful use" of Invista's Gen I technology. (*Id*. ¶ 95.)

For its second federal cause of action, against Rhodia, Invista alleges a violation of Section 43(a) of the Lanham Act, based on the claim that "Rhodia has met with and made statements to a number of current INVISTA ADN customers and potential customers that it has freedom to use the Gen I technology to build and operate a new ADN plant in Asia and that it is a co-holder of the technology." (Compl. ¶ 100.) Invista alleges that Rhodia has made the same statements to DuPont "and to the market as a whole." (*Id*.) Invista alleges that these statements "are literally false and misleading and are designed to confuse and deceive, and have in fact confused and deceived, purchasers of ADN in the global marketplace" because "Rhodia does not own rights to the Gen I technology, but instead has misappropriated and stolen this technology from INVISTA and the Butachimie joint venture." (*Id.* ¶ 101.)

Invista's remaining causes of action against Rhodia arise under state law. For its third cause of action, against Rhodia; its fifth cause of action, against Rhodia and DuPont; its ninth cause of action, against Rhodia; its tenth cause of action, against Rhodia; and its twelfth cause of action, against Rhodia and DuPont, Invista alleges misrepresentation of trade secrets, unfair competition, tortious interference with contract, conversion, and civil conspiracy, respectively. (Compl. ¶¶ 106–114; 124–133; 158–171; 176–181.) These are based on the same factual allegations as the purported federal causes of action.

## ARGUMENT

## I.   THE COURT LACKS SUBJECT MATTER JURISDICTION BECAUSE INVISTA DOES NOT HAVE A COGNIZABLE CLAIM UNDER THE LANHAM ACT

Although Invista invokes this Court's subject matter jurisdiction over its alleged federal claims against Rhodia under both 28 U.S.C. § 1331 (federal question) and 15 U.S.C. § 1121(a) (the Lanham Act), the only federal question it raises against Rhodia is whether Rhodia's conduct violates the Lanham Act. Invista's claims against Rhodia, however, are extraterritorial

in nature and thus not covered by the Lanham Act, and, in any event, do not satisfy any of the applicable provisions of the Lanham Act.  Because Invista cannot assert a cognizable federal claim against Rhodia, the Court lacks subject matter jurisdiction to adjudicate Invista's purported federal claims against Rhodia.

### A.     Invista's Extraterritorial Claims Fall Outside The Lanham Act

Invista's claims against Rhodia amount to an extraterritorial dispute between Luxembourg and French competitors over the alleged misappropriation of trade secrets acquired in connection with a French joint venture to be used to build an ADN plant in Asia.  (*See* Compl. ¶¶ 4-6; 18-24.)  Such extraterritorial disputes do not fall within the purview of the Lanham Act. *See Roquette Am.*, 2004 WL 1488384, at *5.  As the Second Circuit has long held, the benefits of the Lanham Act "are limited in application to within the United States" and "have no extraterritorial application."  *Vanity Fair Mills*, 234 F.2d at 644 (noting that "it seems inconceivable that Congress meant … to extend to all eligible foreign nationals a remedy in the United States against unfair competition occurring in their own countries"); *see also Am. White Cross Labs., Inc. v. H. M. Cote, Inc.*, 556 F. Supp. 753, 758 (S.D.N.Y. 1983) ("I regard *Vanity Fair Mills* as controlling authority for the proposition that insofar as [plaintiff] alleges … unfair competition occurring [outside the United States], the complaint does not state a claim arising under the laws of the United States").

Invista's first cause of action against Rhodia is brought pursuant to Section 44(h) of the Lanham Act, 15 U.S.C. § 1126(h), in conjunction with the Paris Convention.  Section 44(h) provides foreign nationals of countries that are parties to certain international conventions with the United States the right to "effective protection against unfair competition." Aside from the fact that Invista has no Section 44(h) claim, the protection afforded under Section 44(h) does not extend to extraterritorial claims of unfair competition.  *See Roquette Am.*, 2004 WL 1488384,

at *5; *see also EEOC v. Arabian Am. Oil Co.*, 499 U.S. 244, 248 (1991) (noting that U.S. laws are presumed not to apply extraterritorially). The dispute at the heart of this action is overwhelmingly extraterritorial in nature. (*See* Compl. ¶¶ 18-20 (the three Invista plaintiffs are incorporated in Luxembourg); ¶¶ 38, 44, 50, 51 (the trade secrets at issue were acquired in connection with the Butachimie joint venture company located in France); ¶ 128 (the alleged misuse of trade secrets is in relation to the planning and construction by French companies of an ADN plant in Asia); ¶¶ 90, 100, 129 (alleged false and misleading statements made with respect to Rhodia's right to use the Gen 1 technology in connection with its planned construction of an ADN plant in Asia).) Therefore, Section 44(h) of the Lanham Act cannot provide a basis for jurisdiction over Invista's unfair competition claims.

The *Roquette American* case is particularly instructive. In *Roquette American*, this Court examined a claim for unfair competition brought under Section 44(h) of the Lanham Act, 15 U.S.C. § 1126(h).[1] The key plaintiffs and defendants were European companies and the actual misappropriation of trade secrets at issue took place in Europe. The case had loose ties to the United States: the misappropriation was alleged to have had an effect on the sale price of plaintiffs' goods to domestic manufacturers, and one individual defendant was a United States citizen. After weighing all the allegations, this Court concluded, "[t]he gravamen of this complaint is a dispute between European rivals . . . that arose in Europe. Despite some arguable minor connections to the United States, the crucial acts of unfair competition all took place in Europe. Because the Lanham Act does not apply extraterritorially, plaintiffs' Lanham Act claim

---

[1] The Court in *Roquette American* appears to have assumed, without analysis, that a trade secret misappropriation claim could be brought under Section 44(h) of the Lanham Act. However, *Roquette American* was decided before the Second Circuit held in *Empresa* that Section 44(h) does not create an independent cause of action for unfair competition. The Court's assumption in *Roquette American*, therefore, is erroneous and would not stand today.

must be dismissed for lack of subject matter jurisdiction." *Roquette Am.*, 2004 WL 1488384 at

*6. The dispute underlying Invista's Section 44(h) claim has the same predominantly foreign

character and warrants the same result.

There also is no jurisdictional basis for the extraterritorial application of the

Lanham Act to the claims that Invista seeks to assert under Section 43(a) of the Lanham Act. In

*Vanity Fair Mills*, the Second Circuit observed that, under Supreme Court precedent, the Lanham

Act's remedies, other than in Section 44, could be given extraterritorial application when the

following three factors were present: "(1) the defendant's conduct ha[d] a substantial effect on

United States commerce; (2) the defendant was a United States citizen and the United States has

a broad power to regulate the conduct of its citizens in foreign countries; and (3) there was no

conflict with trade-mark rights established under the foreign law." *Vanity Fair Mills*, 234 F.2d at

642; *see also Atl. Richfield Co. v. Arco Globus Int'l Co.*, 150 F.3d 189, 193 (2d Cir. 1998);

*Totalplan Corp.*, 14 F.3d at 830. The Second Circuit held "the absence of one of the above

factors" might well defeat Lanham Act jurisdiction, and the absence of two factors would be

"certainly fatal." *Vanity Fair Mills,* 234 F.2d at 642; *see also Atl. Richfield Co.,* 150 at 193

(refusing to apply the Lanham Act extraterritorially where only limited decision-making

involving foreign activities took place in the United States and no substantial effects were

shown); *Procter & Gamble Co. v. Colgate-Palmolive Co.*, No. 96 CV 9123, 1998 WL 788802, at

*68 (S.D.N.Y. Nov. 9, 1998) (noting that, under Second Circuit law, a substantial effect on U.S.

commerce is a necessary predicate to extraterritorial application of the [Lanham] Act). None of

the factors cited by the Second Circuit in *Vanity Fair Mills* to support the extraterritorial

application of Section 43(a) of the Lanham Act are present in this case.

First and most importantly, Invista does not claim that Rhodia's alleged conduct has had a substantial effect on United States commerce. A substantial effect on U.S. commerce "exists where a defendant's conduct results in consumer confusion or harm to the plaintiff's goodwill in the United States." *Piccoli A/S v. Calvin Klein Jeanswear Co.*, 19 F. Supp.2d 157, 170 (S.D.N.Y. 1998). Invista does not allege that Rhodia's plan to construct and operate an ADN plant in Asia has confused U.S. consumers or harmed Invista's goodwill in the U.S. *See Atl. Richfield Co.*, 150 F.3d at 193 (noting that extraterritorial application of the Lanham Act is not supported where the defendant's foreign use of a mark does not mislead American consumers in their purchases or cause them to look less favorably upon the mark). Instead, Invista emphasizes that Rhodia's proposed construction and operation of an ADN plant will occur in Asia and have a substantial effect upon the Asian market. (Compl. ¶¶ 16, 77.) Thus, the first factor to support the extraterritorial application of Section 43(a) is absent here.

The second and third factors to support the extraterritorial application of Section 43(a) are also missing from the present case. Rhodia is not a U.S. citizen; therefore, the second factor is absent. And because foreign trademark rights are not at issue in this case one way or another, the third factor is absent as well. Even if Invista alleged a conflict with trademark rights established under foreign law, the heart of the dispute between the parties in this case, namely, whether Rhodia entities may use Invista's purported trade secrets, is currently being adjudicated by an ICC arbitration panel in France, under French law. Consequently, any decision by this Court defining the parties' respective rights in connection with Invista's alleged trade secrets potentially could conflict with a ruling by the arbitration panel. *See Int'l Café, S.A.L. v. Hard Rock Café Int'l*, 252 F.3d 1274, 1279 (11th Cir. 2001) ("civil suits against Plaintiff about the validity of certain Hard Rock Café trademarks remain pending in Lebanon. Thus, a ruling by a

United States court on allegations of unfair competition based on the use of Hard Rock Café trademarks might interfere with an inconsistent ruling from Lebanon courts"). Therefore, under *Vanity Fair Mills*, there is no basis for the extraterritorial application of Section 43(a) of the Lanham Act to Invista's claims against Rhodia.

### B.    Invista Has No Cognizable Unfair Competition Claim Under Section 44

In Count I of the Complaint, Invista asserts a claim against Rhodia for unfair competition "arising under the combination of Section 44 of the Lanham Act and the Paris Convention." (Compl. ¶ 93.) Invista alleges that Rhodia's misappropriation and wrongful use of Invista's trade secrets constitute "unfair competition" within the meaning of Section 44(h) of the Lanham Act and Article 10 bis of the Paris Convention. (*Id.* ¶ 95.) Invista contends that these provisions combine to grant them "a federal right to sue for acts of unfair competition and to invoke federal and state law rights and remedies in pursuing a federal cause of action in a U.S. federal court." (*Id.* ¶ 93.) No such right exists.

The Second Circuit has held that "the Paris Convention, as incorporated by Section 44 of the Lanham Act, creates no new cause of action for unfair competition. Any cause of action based on unfair competition must be grounded in the substantive provisions of the Lanham Act." *Empresa*, 399 F.3d at 485 (quoting *Int'l Café*, 252 F.3d at 1277–78). Therefore, contrary to Invista's contention, Invista cannot assert an independent claim for unfair competition under Article 10 bis of the Paris Convention in conjunction with Section 44 of the Lanham Act. *Empresa*, 399 F.3d at 485. "Rather, a claim for unfair competition must be brought under Section 43(a) or state law." *Id.*; *see also Mattel, Inc. v. MCA Records*, 296 F.3d 894, 908 (9th Cir. 2002) ("[defendant] has no claim to a nonexistent federal cause of action for unfair competition"); *Kemart Corp. v. Printing Arts Research Labs., Inc.*, 269 F.2d 375, 389 (9th Cir. 1959) ("the Paris Convention was not intended to define the substantive law in the area of

unfair competition") (internal punctuation omitted); *Int'l Café*, 252 F.3d at 1278 ("we disagree that the Paris Convention creates substantive rights beyond those independently provided in the Lanham Act").

Furthermore, Invista's unfair competition claim under Section 44 of the Lanham Act is expressly based upon the alleged "misappropriation of INVISTA's trade secrets" by Rhodia. (Compl. ¶ 16 ("[w]ith the unlawful pirating of INVISTA's valuable technology, Rhodia … is now positioned to compete unfairly with INVISTA ..."); ¶ 95("[b]y engaging in acts of misappropriation and wrongful use of INVISTA's Trade Secrets … [Rhodia's acts] constitute unfair competition").) The Lanham Act does not create a cause of action for misappropriation of trade secrets. *BP Chems., Ltd. v. Jiangsu Sopo Corp. Ltd.*, 429 F. Supp. 2d 1179, 1186 (E.D. Mo. 2006) ("the Lanham Act and the Paris Convention do not create a cause of action for misappropriation of trade secrets; the Paris Convention "does not create a general tort of unfair competition, and therefore provides . . . no protection against trade secret misappropriation"). Thus, the cause of action that Invista seeks to assert under Section 44 of the Lanham Act simply does not exist under federal law.[2]

---

[2] The Court should not rely on the two cases cited by Invista in its complaint (Compl. ¶ 27), *Toho Co. Ltd. v. Sears, Roebuck & Co.*, 645 F.2d 788 (9th Cir. 1981), and *BP Chems., Ltd. v. Formosa Chem. & Fibre Corp.*, No 97 CV 4554, slip op. at 24, n.23 (D.N.J. May 14, 1998), to support its Section 44 claims. Cases decided by the Ninth Circuit subsequent to *Toho* are consistent with the Second Circuit's decision in *Empresa* that there is no federal cause of action under the Lanham Act for foreigners beyond what is available to a U.S. citizen. *See, e.g., Grupo Gigante SA de CV v. Dallo & Co.*, 391 F.3d 1088, 1099–100 (9th Cir. 2004) ("the Paris Convention creates neither a federal cause of action nor additional substantive rights" but merely "ensures that 'foreign nationals should be given the same treatment in each of the member countries as that country makes available to its own citizens'") (internal citations omitted). The district court decision in *BP Chems* relegates its reference to the Section 44(h) issue to a footnote, where, quoting plaintiff's complaint, it says without analysis or support that the plaintiff's claims arise under the combination of Section 44 and the Paris Convention. On appeal, the Third Circuit ordered the case dismissed for lack of personal jurisdiction over the defendant, effectively vacating the district court's decision. *BP Chems, Ltd. v. Formosa Chem. & Fibre Corp.*, 229 F.3d 254, 259 n. 1 (3d Cir. 2000).

### C.    Invista Has No Cognizable Claim Under Section 43

In Count II of the Complaint, Invista alleges a claim against Rhodia under Section 43(a) of the Lanham Act.  (Compl.  ¶ 100.)  According to Invista's complaint, "Rhodia has met with and made statements to a number of current INVISTA ADN customers and potential customers that it has freedom to use Gen I technology to build and operate a new ADN plant in Asia and that it is the co-holder of the technology."  (*Id.*)  Invista claims that these statements are "literally false and misleading," "designed to confuse and deceive," and have in fact "confused and deceived" purchasers of ADN in the global marketplace because "Rhodia does not own rights to the Gen 1 technology, but instead has misappropriated and stolen this technology from INVISTA and the Butachimie joint venture."  (*Id.*  ¶ 101.)  Invista further alleges that these statements "were made in connection with commercial advertising and promotion."  (*Id.*  ¶ 102.)

Section 43(a) of the Lanham Act provides two potential grounds upon which a party may assert a claim: (i) false designation under Section 43(a)(1)(A) and (ii) false advertising under Section 43(a)(1)(B).  As the Supreme Court has noted, "[b]ecause of its inherently limited wording, Section 43(a) can never be a federal 'codification' of the overall law of 'unfair competition.'"  *Dastar Corp. v. Twentieth Century Fox Film Corp.*, 539 U.S. 23, 29 (2003).  Thus, "the Lanham Act does not give anyone the right to sue for acts which constitute deceptive trade practices but which do not constitute unfair advertising."  *Alfred Dunhill, Ltd. V. Interstate Cigar Co.*, 499 F.2d 232, 237 (2d Cir. 1974).  Whether characterized as "false designation" or "false advertising," Invista's generalized allegations that Rhodia has engaged in unfair competition by making false statements about the ownership of the Gen I technology are not actionable under Section 43(a).

1.    **Invista's Claims Do Not Concern "Goods Or Services"**

As a threshold matter, a plaintiff seeking to bring a claim under Section 43(a)(1) of the Lanham Act must allege that the violation occurred "in connection with any goods or services, or any container for goods." The stated purpose of Section 43(a)(1) is "to prevent customer confusion regarding a product's source or sponsorship." *digiGAN Inc. v. iValidate, Inc.*, No. 02 CV 420, 2004 WL 203010, at *4 (S.D.N.Y. Feb. 3, 2004). Section 43(a)(1) is not a panacea for all unfair trade practices. *Id.*

However, Invista has failed to allege that Rhodia's conduct occurred in connection with any "good or services" or "any container for goods." Invista's allegations in support of its unfair advertising claim under Section 43(a) refer to statements purportedly made by Rhodia suggesting only that it "has [the] freedom to use the Gen I technology to build and operate a new ADN plant in Asia." (Compl. ¶ 100.) Although Invista alleges that these statements are false, the statements are not actionable under Section 43(a) because the Gen I technology at issue is not a "good" or "service" within the meaning of Section 43(a). Rather, Gen I is a process used to produce ADN, which itself is an intermediate used in the production of nylon 6,6. (*See* Compl. ¶ 2, n. 1 (describing the "production of ADN using Gen 1 technology"); ¶¶ 45-47 (describing the "Gen 1 Process").) Statements about processes and technologies are not actionable under Section 43(a).

For example, in *Tubeco, Inc. v. Crippen Pipe Fabrication Corp.*, this Court analyzed an analogous situation in which a plaintiff sued under Section 43(a), alleging that the defendant had duplicated its unique process for bending custom pipes, patented that process, and then advertised to plaintiff's customers through descriptive brochures that it had a right to use the process. 402 F. Supp. at 846. This Court noted that "communications or negotiations regarding the patent with prospective licensees, sources of financing, or prospective customers for pipe

14

bending services…are in no sense the false advertising at which the Lanham Act was aimed." *Id.* at 847. The Court further stated that "no article was represented as an item or service for sale," and "the 'goods or services' here involved is hot bend pipe, not a patent or method by which the ultimate product is turned out." *Id.* at 848. For these reasons, the Court dismissed plaintiff's Lanham Act claims. *See also digiGAN Inc.*, 2004 WL 203010, at *5 (holding that alleged false advertising with respect to a patent, as opposed to an actual product or service sold, was not actionable under the Lanham Act because a patent is not a good or service within the meaning of the Act); *Hans-Jurgen Laube & Oxidwerk HJL AG v. KM Europa Metal AG*, No. 96 CV 8147, 1998 WL 148427 at *2 (S.D.N.Y. March 27, 1998) (citing *Tubeco* for the proposition that "neither a patent nor a process for creating a product constitute 'goods' under Section 43(a) of the Lanham Act").

Accordingly, Invista cannot satisfy a threshold requirement of Section 43(a). The alleged false representations by Rhodia relate to the Gen I technology, the process by which ADN is produced, and do not involve a "good or service" within the meaning of Section 43(a).

## 2.     Invista Cannot Make Out A "Reverse-Passing Off" Claim

Invista cannot make out a "reverse passing off" claim against Rhodia under Section 43(a). *See Dastar*, 539 U.S. at 28 ("reverse passing off" occurs when "the producer misrepresents someone else's goods or services as his own"). Invista alleges that, "[b]y falsely asserting that it owns the rights to the Gen I technology, Rhodia is unfairly trading on the reputation and prestige of the Gen 1 technology in the marketplace." (Compl. ¶ 102.) However, to state a valid "reverse passing off" claim under Section 43(a), the alleged false or misleading statements by Rhodia must be with respect to the origin of the "tangible product sold in the marketplace" and not, as Invista alleges, the intellectual property embodied within the product. *Monsanto Co. v. Syngenta Seeds, Inc.*, 443 F. Supp. 2d 648, 652 (D. Del. 2006).

In *Monsanto*, plaintiffs, the owners of a special biotechnology (GA21 trait) used to develop a resistant strain of corn, asserted a claim under the Lanham Act for "reverse passing off" against defendant, whom plaintiffs alleged had "misappropriated [plaintiffs' biotechnology] and [was] improperly selling [it] as its own." *Id.* at 649–50. The court held that the relevant product for purposes of Lanham Act protection was the "seed" that was sold in the marketplace, not the biotechnology that produced the seed. *Id.* at 652. The court reached this conclusion notwithstanding the fact that "consumers buy the seed for its GA21 trait." *Id.* Acknowledging the "Supreme Court's reluctance to tread on the areas of intellectual property," the court "decline[d] to consider [defendant's] hybrid seed containing the GA21 trait to be 'merely repackaging'" and noted that this was "a question for the intellectual property laws." *Id.* (*citing Dastar*, 539 U.S. at 31). Similarly, the Supreme Court has stated in *Dastar* that "in construing the Lanham Act, we have been 'careful to caution against misuse or over-extension' of trademark and related protections into areas traditionally occupied by patent or copyright." 539 U.S. at 35.

Under *Monsanto* and *Dastar*, Invista's Section 43(a) claim against Rhodia for purportedly passing off the Gen I technology as its own, is not a recognized claim under the Lanham Act and must therefore be dismissed. *See Dastar*, 539 U.S. at 37 (holding that the phrase "origin of goods" in the context of a "reverse passing off" claim under the Lanham Act refers to the "producer of the tangible goods that are offered for sale, and not to the author of any idea, concept, or communication embodied in those goods"); *Thomas Publ'g Co., LLC v. Tech. Evaluation Ctrs., Inc.*, No. 06 CV 14212, 2007 WL 2193964 at *3 (S.D.N.Y. July 27, 2007) (dismissing plaintiff's false designation claim under the Lanham Act that was "center[ed] around its contention that it originated certain ideas and concepts contained" in defendant's product).

16

### 3.     Invista Has Failed To State A Claim Under Section 43(a)(1)(A)

To the extent Invista purports to assert a Section 43(a)(1)(A) claim against
Rhodia, such a claim must fail.  Under Section 43(a)(1)(A), the producer of a product or service
may initiate a cause of action against a person "who uses in commerce any word, term, name,
symbol, or device, or any combination thereof…which…is likely to cause confusion … as to the
origin, sponsorship, or approval of [the producer's services]."  *ITC Ltd.*, 482 F.3d at 154.  "To
succeed on a Section 43(a)(1)(A) claim, a plaintiff must prove that (1) the mark or dress is
distinctive as to the source of the good or service at issue, and (2) that there is the likelihood of
confusion between the plaintiff's good or service and the defendant."  *ITC Ltd.*, 482 F.3d at 154.
Thus, a necessary predicate to the assertion of a claim under Section 43(a)(1)(A) is the existence
of a "mark" entitled to protection under the Lanham Act.

Invista does not allege that the Gen I technology is a protected trademark.  Rather,
throughout the Complaint Invista refers to Gen I only as the process by which ADN is produced.
(*See* Compl. ¶¶ 2, 44–47.)  As previously noted, Section 43(a) applies only with respect to actual
goods and services, not the underlying process used to create a product or the intellectual
property embodied in the product.  Therefore, Invista has failed to allege a claim under Section
43(a)(1)(A).

### 4.     Invista Has Failed To State A Claim Under Section 43(a)(1)(B)

Invista also has no claim against Rhodia for false advertising under Section
43(a)(1)(B).  "In order to establish a violation of 15 U.S.C. § 1125(a)(1)(B), [plaintiffs] must
show that (1) defendants made a false or misleading representation regarding the nature,
characteristics, or quality of the plaintiff's services; (2) the representations were used in
commerce; (3) the representations were made in the context of commercial advertising or
promotion; and (4) defendants' actions made the plaintiff believe it would be damaged by the

17

representations." *Gmurzynska v. Hutton*, 257 F. Supp. 2d 621, 628–29 (S.D.N.Y. 2003) (citing

*Nat'l Artists Mgm't Co., Inc.*, *v. Weaving*, 769 F. Supp. 1224, 1230 (S.D.N.Y. 2003)).  In

addition, to satisfy the third element of commercial advertising or promotion, "a statement must

be (1) commercial speech; (2) made by a defendant who is a competitor of the plaintiff; (3) to

influence consumers to buy defendant's goods or services; and (4) is disseminated sufficiently to

the relevant purchasing public to constitute advertising or promotion."  *Prof'l Sound Servs. v.

Guzzi*, 349 F. Supp. 2d 722, 728 (S.D.N.Y. 2004) (citing *Gordon & Breach Sci. Publishers S.A.,

STBS v. Am. Inst. of Physics*, 859 F. Supp 1521, 1536 (S.D.N.Y. 1994)).  Invista has failed to

meet several  essential requirements for a Section 43(a)(1)(B) claim.

      Most significantly, Invista does not allege that Rhodia has made any false

statements about the nature, characteristics, or quality of Invista's goods or services, as is

required for a false advertising claim under Section 43(a)(1)(B).  In addition, Invista's

allegations about Rhodia's alleged statements do not satisfy the "used in commerce" test for a

false advertising claim.  Under that test, any allegedly false or misleading representations by

Rhodia must have been "used in commerce."  *See Demetriades*, 698 F. Supp. at 521

("jurisdiction under Section 43(a) of the Lanham Act is premised expressly upon a defendant's

actions in placing into 'commerce' a good or service containing a false designation of origin").

"Commerce" is defined under the Lanham Act to comprise "all commerce which may lawfully

be regulated by Congress.".  *Id.* (quoting 11 U.S.C. § 1127).  Invista's complaint is bereft of

allegations of false representations by Rhodia in U.S. commerce, or in connection with the

commercial advertising or promotion of an actual "good" or "service."

      In the two instances where Invista alleges that Rhodia made false statements to

U.S. companies (Dupont and Chevron (Compl. ¶ 5)), the subject of the purported

misrepresentation was alleged to have been Rhodia's right to use the underlying Gen I technology, not any "good" to be sold to the consumer, which is the only subject actionable under Section 43(a)(1)(B).  Moreover, according to Invista's complaint (Compl. ¶¶ 118, 119), DuPont could not have been misled by Rhodia's statements because it was allegedly "fully aware" that Rhodia is allegedly misusing the Gen I technology.  Accordingly, Invista has no claim under Section 43(a)(1)(B).

## II.    THE COURT SHOULD NOT EXERCISE SUPPLEMENTAL JURISDICTION

Given Invista's failure to allege any cognizable claim under federal law, there is no reason for the Court to exercise supplemental jurisdiction under 28 U.S.C. § 1367 over Invista's non-federal claims.  Although the exercise of supplemental jurisdiction is discretionary, the Second Circuit has noted that "[t]he basis for retaining jurisdiction is weak when…the federal claims are dismissed before trial."  *Baylis*, 843 F.2d at 664; *see also Gmurzynska*, 257 F. Supp. 2d at 632 ("in light of the court's dismissal of the federal claim under the Lanham Act, the Court declines to resolve Plaintiff's state law claims").  Particularly where, as here, the federal question is "so insubstantial, implausible, foreclosed by prior decisions of this Court or otherwise completely devoid of merit as not to involve a federal controversy within the jurisdiction of the District Court," the Court should decline to entertain the remaining non-federal claims.  *Hagans v. Lavine*, 415 U.S. 528, 543 (1974) (quoting *Oneida Indian Nation v. County of Oneida*, 414 U.S. 661, 666-67 (1974)).

Moreover, as noted above, adjudication by this Court of Invista's non-federal claims could put the Court in conflict with the pending arbitration between the parties.  As Rhodia has explained in the memorandum of law supporting its concurrent motion to dismiss or stay in favor of arbitration, the issue of whether Rhodia entities have the right to use Invista's Gen I technology and other purported trade secrets is currently being adjudicated by an arbitral

panel constituted by the ICC in France. Entertaining any of Invista's claims could put a decision by this Court in conflict with that decision, which will be based on French law. For this additional reason, the Court should decline to exercise supplemental jurisdiction over Invista's non-federal claims.

## CONCLUSION

For these reasons, Rhodia respectfully moves that the Court dismiss Invista's complaint against it for lack of subject matter jurisdiction.

Dated:      New York, New York
            September 22, 2008

                                SHEARMAN & STERLING LLP


                                By:  /s/ Jonathan L. Greenblatt
                                    Jonathan L. Greenblatt
                                    Henry Weisburg
                                    Neil H. Koslowe
                                    Paula Howell

                                599 Lexington Avenue
                                New York, NY 10022-6069
                                Telephone: (212) 848-4000
                                Facsimile: (212) 848-7179
                                jgreenblatt@shearman.com

                                Attorneys for Defendant
                                Rhodia S.A.