# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF NEW YORK

INVISTA S.à r.l., INVISTA Technologies
S.à r.l., and INVISTA North America S.à r.l.,

                Plaintiffs,

     v.

E.I. DU PONT DE NEMOURS AND
COMPANY and RHODIA S.A.,

                Defendants.

Civil Action No. 08-cv-7270 (BSJ)

# MEMORANDUM OF LAW OF DEFENDANT
## E.I. DuPONT DE NEMOURS AND COMPANY
## IN SUPPORT OF ITS MOTION TO DISMISS THE COMPLAINT

KAYE SCHOLER LLP
425 Park Avenue
New York, NY  10025
Tel. (212) 836-8000
Fax (212) 836-8689

BOIES, SCHILLER & FLEXNER LLP
575 Lexington Avenue
7th Floor
New York, New York  10022
Tel. (212) 303-3524
Fax (212) 446-2350

*Attorneys for Defendant*
  *E.I. DuPont de Nemours and Company*

Dated:  September 22, 2008

~4288431

# TABLE OF CONTENTS

**Page**

PRELIMINARY STATEMENT ................................................................................................ 1

PLAINTIFFS' ALLEGATIONS ........................................................................................... 3

ARGUMENT ........................................................................................................................... 6

THE COURT LACKS SUBJECT MATTER JURISDICTION OVER THE CLAIMS
ASSERTED AGAINST DuPONT ......................................................................................... 6

      A.    Section 44(h) of the Lanham Act and the Paris Convention Do Not Create
            a Federal Claim for Relief for Misappropriation of Trade Secrets nor
            Subject Matter Jurisdiction Over Plaintiffs' State Law Misappropriation
            Claims Against DuPont........................................................................................ 7

      B.    The Lanham Act Has No Extraterritorial Application to Foreign Conduct
            that Has No Substantial Effect on U.S. Commerce ................................................ 17

      C.    The Court Does Not Have Supplemental Jurisdiction Under 28 U.S.C.
            § 1367 of the Claims Asserted Against DuPont .................................................... 20

CONCLUSION........................................................................................................................ 21

## <u>TABLE OF AUTHORITIES</u>

<u>Page(s)</u>

<u>Cases</u>

*APWU v. Potter*,
    343 F.3d 619 (2d Cir. 2003)...................................................................... 6

*ATSI Commc'ns, Inc.*,
    493 F.3d 87 (2d Cir. 2007)........................................................................ 7

*Alfred Dunhill, Ltd. v. Interstate Cigar Co.*,
    499 F.2d 232 (2d Cir. 1974)................................................................ 11, 12

*Am. White Cross Labs., Inc. v. H.M. Cote, Inc.*,
    556 F. Supp. 753 (S.D.N.Y. 1983)........................................................ 19

*Atlantic Richfield Co. v. ARCO Globus Int'l Co.*,
    150 F.3d 189 (2d Cir. 1998)........................................................... 3, 17, 18

*BP Chemicals, Ltd. v. Formosa Chemical & Fibre Corporation*,
    No. 97-CV-4554 (D.N.J. May 14, 1998) ............................................. 8, 14

*BP Chems., Ltd. v. Formosa Chem. & Fibre Corp.*,
    229 F.3d 254 (3d Cir. 2000)................................................................... 16

*BP Chems. Ltd. v. Jiangsu Sopo Corp.*,
    429 F. Supp.2d 1179 (E.D. Mo. 2006).................................................. 13

*BP Chems. Ltd. v. Yankuang Group Bayang Foreign Economic & Trade Co.*,
    No. CV 03-08167 PA (JTLx), Slip Op. (C.D. Cal. Mar. 23, 2004).................. 13

*Bell Atlantic Corp. v. Twombly*,
    127 S. Ct. 1955 (2007)............................................................................ 7

*Cave v. East Meadow Union Free School Dist.*,
    514 F.3d 240 (2d Cir. 2008).................................................................. 20

*Colligan v. Activities Club of N.Y., Ltd.*,
    442 F.2d 686 (2d Cir. 1971)............................................................. 11, 12

*Dastar Corp. v. Twentieth Century Fox Film Corp.*,
    539 U.S. 23 (2003)........................................................................... 11, 12

*Empresa Cubana del Tabaco v. Culbro Corp.*,
    399 F.3d 462 (2d Cir. 2005).......................................................... *passim*

**Page(s)**

*First Capital Asset Mgmt., Inc. v. Satinwood, Inc.*,
    385 F.3d 159 (2d Cir. 2004)...................................................................... 20

*Foley Bros. v. Filardo*,
    336 U.S. 281 (1949).............................................................................. 17

*Grupo Dataflux v. Atlas Global Group, L.P.*,
    541 U.S. 567 (2004)............................................................................... 8

*Grupo Gigante SA De CV v. Dallo & Co.*,
    391 F.3d 1088 (9th Cir. 2004) .........................................................14-15

*ITC Ltd. v. Punchgini, Inc.*,
    482 F.3d 135 (2d Cir. 2007)................................................................. 10

*Int'l Café, S.A.L. v. Hard Rock Café Int'l (U.S.A.), Inc.*,
    252 F.3d 1274 (11th Cir. 2001) ...................................................9, 15, 17, 18

*L'Aiglon Apparel v. Lana Lobell, Inc.*,
    214 F.2d 649 (3d Cir. 1954).................................................................. 11

*Matsumura v. Benihana Nat'l Corp.*,
    542 F. Supp.2d 245 (S.D.N.Y. 2008)....................................................... 6

*Mattel, Inc. v. MCA Records, Inc.*,
    296 F.3d 894 (9th Cir. 2002) ..........................................................13, 14

*In re Nat'l Australia Bank Secur. Litig.*,
    2006 WL 3844465 (S.D.N.Y. Oct. 25, 2006) ........................................... 6

*In re Parmalat Sec. Litig.*,
    501 F. Supp.2d 560 (S.D.N.Y. 2007)....................................................... 7

*Scotch Whisky Ass'n v. Majestic Distilling Co.*,
    958 F.2d 594 (4th Cir. 1992) ................................................................ 15

*Small v. United States*,
    544 U.S. 385 (2005).............................................................................. 17

*Toho Co. v. Sears, Roebuck & Co.*,
    645 F.2d 788 (9th Cir. 1981) .............................................................8, 14

*Totalplan Corp. of America v. Colborne*,
    14 F.3d 824 (2d Cir. 1994)................................................................... 18

*United Mine Workers of Am. v. Gibbs*,
    383 U.S. 715 (1966)............................................................................. 20

**Page(s)**

*Universal Licensing Corp. v. Paola del Lungo S.p.A.*,
    293 F.3d 579 (2d Cir. 2002)............................................................... 8

*Vanity Fair Mills v. T. Eaton Co.*,
    234 F.2d 633 (2d Cir. 1956)......................................................... *passim*

*Williams v. Citibank, N.A.*,
    2008 WL 2757079 (S.D.N.Y. July 17, 2008) ................................. 20

*World Book, Inc. v. Int'l Bus. Mach. Corp.*,
    354 F. Supp.2d 451 (S.D.N.Y. 2005).............................................. 18

## Statutes, Treaties and Rules

15 U.S.C. § 1125(a) ............................................................... *passim*

15 U.S.C. § 1126(a) ............................................................... 1, 13

15 U.S.C. § 1126(b) ..................................................................... 8

15 U.S.C. § 1126(h) ............................................................... *passim*

15 U.S.C. § 1126(i) ................................................................11-12

15 U.S.C. § 1521 ......................................................................... 11

28 U.S.C. § 1331 ......................................................................... 11

28 U.S.C. § 1332(2)-(3) ................................................................. 7

28 U.S.C. § 1338(b) ......................................................... 11, 14, 16

28 U.S.C. § 1367 ............................................................. 11, 14, 20

Pub. L. 489, 60 Stat. 441 (July 5, 1946) ...................................... 16

Pub. L. 773, 62 Stat. 931 (June 25, 1948)................................... 16

Paris Convention for the Protection of Industrial Property, 21 U.S.T. 1583 ........................ *passim*

FED. R. CIV. P. 12(b)(1) ............................................................ 1, 6

FED. R. CIV. P. 12(b)(6)............................................................ 1, 6

## Treatises

J. McCarthy, TRADEMARKS & UNFAIR COMPETITION (4th ed. 2002)............................................ 11

Pursuant to the Court's direction at the conference on September 11, 2008, defendant E.I. Du Pont de Nemours and Company ("DuPont") submits this memorandum of law in support of its motion, pursuant to FED. R. CIV. P. 12(b)(1) and 12(b)(6), to dismiss the claims against DuPont for lack of subject matter jurisdiction.[1]  DuPont also joins in the motions to dismiss filed by co-defendant Rhodia S.A., also as directed by the Court.

## PRELIMINARY STATEMENT

This is an action brought by three foreign plaintiffs against a French company and an American company, the gravamen of which is that the French company allegedly misappropriated undefined trade secrets that it obtained through its 30-year operation of and participation in a joint venture in France with the foreign plaintiffs' affiliate.  This alleged conduct was purportedly undertaken in contemplation of building a plant in China to make adiponitrile, a critical "intermediate" chemical used in the manufacture of nylon 6,6 for the Asian market.   The plaintiffs – INVISTA S.à r.l., INVISTA Technologies S.à r.l., and INVISTA North America S.à r.l. (Complaint ("Comp.") ¶¶ 18-20) – are all Luxembourg limited liability companies.  Plaintiffs allege, without specificity, that the American company, DuPont (*id.* ¶ 22), aided and abetted the French company, Rhodia S.A. ("Rhodia") (*id.* ¶ 23), in the alleged trade secret misappropriation and, in doing so, breached contractual obligations with plaintiffs.  Plaintiffs further allege that the plant, if built, will not begin operations until at least 2011/2012 and would compete with a

---

[1]    Because plaintiffs rely exclusively on Section 44 of the Lanham Act as the basis for federal jurisdiction, and because Section 44 does not provide a federal forum for assertion of plaintiffs' misappropriation of trade secret claims, DuPont is moving to dismiss for lack of subject matter jurisdiction under FED. R. CIV. P. 12(b)(1).  Because plaintiffs' misappropriation of trade secret claims also fail to state a claim for relief under the Lanham Act, we are also moving, out of an excess of caution, to dismiss plaintiffs' federal claim under Rule 12(b)(6).  However, in accordance with this Court's September 11th order, DuPont is not moving to dismiss at this time on any other basis, and reserves the right to do so depending on the Court's resolution of defendants' motions filed today.

plant that plaintiffs hope to build, also in Asia, and which is also designed to meet Asian demand.

Plaintiffs base their allegation of federal jurisdiction for their claims against DuPont solely on Section 44(h) of the Lanham Act, 15 U.S.C. § 1126(h).[2]  In *Empresa Cubana del Tabaco v. Culbro Corp.*, 399 F.3d 462, 484-85 (2d Cir. 2005), the Second Circuit held that Section 44(h), in which Congress implemented the Paris Convention for the Protection of Industrial Property, 21 U.S.T. 1583, provides a claim for relief to foreign nationals *only* to the extent that a domestic entity would have a claim under the Lanham Act.  Because the Lanham Act does not provide a claim for relief for misappropriation of trade secrets to domestic entities, Section 44(h) does not provide plaintiffs a basis to assert their misappropriation claim in this federal forum.   Accordingly, because there is no basis for plaintiffs to assert their misappropriation claim in this federal forum, and there being no diversity jurisdiction, this Court lacks subject matter jurisdiction over plaintiffs' claims.

Moreover, even if, contrary to *Empresa*, Section 44(h) of the Lanham Act encompassed plaintiffs' claim against DuPont, this Court would not have subject matter jurisdiction.

---

[2]     Plaintiffs also allege that this Court has subject matter jurisdiction over DuPont under Sections 44(a) of the Lanham Act, 15 U.S.C. § 1126(a).  (Comp. ¶ 27).  Section 44(a) provides, in relevant part:  "The Director shall keep a register of all marks communicated to him by the international bureaus provided for by the conventions for the protection of industrial property, trademarks, trade and commercial names, and the repression of unfair competition to which the United States is or may become a party, and upon the payment of the fees required by such conventions and the fees required in this chapter may place the marks so communicated upon such register. . . ."  This provision has no application here, where the complaint makes no allegations with respect to any marks or the registration thereof.

Plaintiffs also cite to Section 43(a) of the Lanham Act, 15 U.S.C. § 1125(a), as a basis for jurisdiction over Rhodia.  But the only "federal question" claim plaintiffs have asserted against DuPont is based on Section 44, not Section 43(a).  Rhodia, in its motion, will address why Section 43(a) does not provide a basis for federal question jurisdiction over it.

That is because plaintiffs make no allegation that the purported trade secret misappropriation, which is centered in France with respect to a plant to be built in Asia to satisfy demand in Asia, has had, or will have, any effect, let alone a "substantial effect," on United States commerce, as is required under Second Circuit law to apply the Lanham Act extraterritorially. *Atlantic Richfield Co. v. ARCO Globus Int'l Co.*, 150 F.3d 189, 192 (2d Cir. 1998); *Vanity Fair Mills v. T. Eaton Co.*, 234 F.2d 633, 642 (2d Cir. 1956). Plaintiffs' jurisdictional bases are thus flawed as a matter of law and the complaint should be dismissed for lack of jurisdiction. Nor should the Court exercise supplemental jurisdiction over plaintiffs' state law claims because there is no jurisdiction over the federal claims at the outset of the case and because, as explained in co-defendant Rhodia's motion to dismiss or stay, the Court should defer to the arbitration proceeding pending in France.

## PLAINTIFFS' ALLEGATIONS

According to the complaint, "[t]he Trade Secrets at issue concern a process for the production of adiponitrile ("ADN"), a critical 'intermediate' chemical used in the manufacture of nylon 6,6." (Comp. ¶¶ 2, 38-39, 45-47, 50). In particular, the allegations relate to a two-step process to make ADN from hydrocyanic acid ("HCN") and butadiene – the so-called "Gen 1 technology" – which DuPont invented and developed in the late 1960s and early 1970s. (*Id.*). In 1974, a French subsidiary of DuPont ("DuPont France"), and Société des Usines Chimique Rhone-Poulenc ("SUCRP"), formed a joint venture called Butachimie SNC ("Butachimie"), to exploit DuPont's Gen 1 technology. (*Id.* ¶¶ 4, 26, 38-43, 45).[3]

---

[3] DuPont does not concede nor acknowledge as correct plaintiffs' characterization of many of the alleged facts of this case, including what is or is not properly referred to as "Gen 1," but will accept the allegations in the complaint solely for the purposes of this motion to dismiss.

In 1997, after Butachimie had been operating for a number of years, SUCRP transferred its chemical specialties business to the Rhodia Group, and an affiliate of defendant Rhodia, acquired SUCRP's interest in Butachimie.  (Comp. ¶ 59).  Plaintiffs allege that Rhodia, and its predecessors, have operated the Butachimie plant and participated in that joint venture for over 30 years.  (*Id.* ¶¶ 38, 44, 59).  Plaintiffs allege that, as a result of the Purchase and Sale Agreement described below, they are now, through their affiliate KoSa France Holding S.à r.l, the owner of DuPont's interest in Butachimie.  (*Id.* ¶ 60).  Plaintiffs allege that Rhodia is accessing the Gen 1 technology in Butachimie in France and is preparing to use it in a proposed plant in Asia.  (*Id.* ¶¶ 6-7, 12, 77, 80).

The complaint alleges that, in 2004, DuPont entered into a Purchase and Sale Agreement ("PSA") with "affiliates of the company now known as INVISTA," pursuant to which DuPont sold its Textiles and Interiors Business, which included its nylon operations and the Gen 1 technology.  (Comp. ¶¶ 11, 60-61).  Plaintiffs allege that the PSA obligates DuPont not to "manufacture, distribute, resell or sell" ADN before April 30, 2011, and not to disclose information the PSA defines as "Confidential Information" until April 30, 2014, or to take any action that would undermine any  privileges that the PSA may have transferred.  (Comp. ¶¶ 63-65).

In 2004, DuPont and certain plaintiffs also entered into a separate contract, the Patent and Technical Information Agreement ("PTIA").  (Comp. ¶¶ 11, 62).  According to the complaint, in the PTIA, DuPont assigned and/or exclusively licensed certain rights to information related to the production of ADN including Gen 1 technology.  (*Id.* ¶ 62).  The complaint

further alleges that the PTIA bars DuPont from disclosing Confidential Information until January 2, 2013.  (*Id.* ¶¶ 62-64).[4]

        The complaint alleges that in September 2006, Rhodia announced that it was studying the feasibility of building an ADN plant in Asia, "where demand is expected to dramatically increase in the next decade," and made public statements in March and July 2007 to the effect that it was "studying the feasibility of building new ADN capacity in China . . . with a view of starting operations in 2011/12."  (Comp. ¶¶ 67-75).  The complaint further alleges that Rhodia "intends to use the Gen 1 technology in the proposed plant in Asia."  (*Id*. ¶ 77).  Plaintiffs do *not* allege that Rhodia has begun construction on an ADN plant in China, nor that Rhodia could possibly manufacture ADN in any new plant before 2011/12 at the earliest.

        Plaintiffs' specific factual allegations against DuPont are minimal.  First, plaintiffs allege that DuPont "has made some preliminary investments in a proposed expansion by Rhodia of its ADN capacity."  (Comp. ¶ 83; *see id.* ¶¶ 9, 12).  Second, plaintiffs allege that DuPont has contacted its own former employees and has sought in interviews to induce them "to divulge attorney-client privileged and confidential information."  (*Id*. ¶ 13; *see id.* ¶ 89).  Lastly, plaintiffs allege that "DuPont has also discussed technical, commercial, and legal issues with Rhodia and has provided Rhodia with confidential information."  (*Id*. ¶ 88; *see id.* ¶¶ 32, 84).

        In short, all of plaintiffs' allegations are directed toward unauthorized use of information held by the Butachimie joint venture in France or relate to Rhodia's plans to use allegedly misappropriated trade secrets to build an ADN plaint in China in three to four years to

---

[4]     DuPont does not concede nor acknowledge as correct plaintiffs' characterization of the provisions of any written agreements between the parties, or of any alleged confidential, trade secret, or "privileged information" thereunder, but will accept the allegations in the complaint solely for the purposes of this motion to dismiss.

compete in and supply the Asian market, rather than activities substantially affecting U.S. commerce.  (*See* Comp. ¶¶ 4, 41, 50, 52 110).

Based on these allegations, plaintiffs assert one purported federal claim against DuPont under Section 44(h) of the Lanham Act and the Paris Convention (Count I), plus seven state law claims:  misappropriation of trade secrets (Count IV), unfair competition (Count V), breach of the PSA and PTIA contracts (Counts VI, VII), breach of the implied covenant of good faith and fair dealing (Count VIII), reimbursement of losses under the PSA (Count XI), and civil conspiracy (Count XII).  As for Rhodia, plaintiffs assert two purported federal claims, under Section 44(h) of the Lanham Act and the Paris Convention (Count I), and for false advertising under Section 43(a) of the Lanham Act (Count II), as well as five state law claims:  misappropriation of trade secrets (Count III), unfair competition (Count V), tortious interference with contract (Count IX), conversion (Count 10) and civil conspiracy (Count XII).

## ARGUMENT

### THE COURT LACKS SUBJECT MATTER JURISDICTION OVER THE CLAIMS ASSERTED AGAINST DuPONT

Plaintiffs' sole claimed basis for federal jurisdiction rests on their legally deficient Lanham Act Claim.  As this Court has explained, in granting a motion to dismiss for lack of subject matter jurisdiction under FED. R. CIV. P. 12(b)(1):

> A plaintiff bears the burden of proving by a preponderance of the evidence that subject matter jurisdiction exists.  Jurisdictional allegations must be shown affirmatively, and may not be inferred favorably to the party asserting it.

*In re Nat'l Australia Bank Secur. Litig.*, 2006 WL 3844465, *2  (S.D.N.Y. Oct. 25, 2006) (citations omitted).  Moreover, "'[j]urisdiction must be shown affirmatively, and that showing is not made by drawing from the pleadings inferences favorable to the party asserting it.'"  *APWU v. Potter*, 343 F.3d 619, 623 (2d Cir. 2003).

Motions to dismiss under Rule 12(b)(6), FED. R. CIV. P., are granted when, as the Supreme Court recently affirmed the plaintiff fails to plead "enough facts to state a claim to relief that is plausible on its face." *Bell Atlantic Corp. v. Twombly*, 127 S. Ct. 1955, 1974 (2007). Under this "plausibility standard," "a plaintiff's obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Id.* at 1964-65 (citations omitted); *ATSI Commc'ns, Inc.*, 493 F.3d 87, 98 & n.2 (2d Cir. 2007). The Court clearly instructed that "[f]actual allegations must be enough to raise a right to relief above the speculative level"; allegations setting forth claims that are merely "conceivable" are insufficient. *Bell Atlantic*, 127 S. Ct. at 1965, 1974; *In re Parmalat Sec. Litig.*, 501 F. Supp.2d 560, 572 (S.D.N.Y. 2007) (same). "'[C]onclusory allegations" and "legal conclusions masquerading as factual conclusions will not suffice to prevent a motion to dismiss.'" *Matsumura v. Benihana Nat'l Corp.*, 542 F. Supp.2d 245, 251 (S.D.N.Y. 2008) (complaint dismissed).

Applying these standards here, it is clear that this Court lacks subject matter jurisdiction over the claims asserted against DuPont and, accordingly, the claims against DuPont should be dismissed.

**A.**    **Section 44(h) of the Lanham Act and the Paris Convention Do Not Create a Federal Claim for Relief for Misappropriation of Trade Secrets nor Subject Matter Jurisdiction Over Plaintiffs' State Law Misappropriation Claims Against DuPont**

Plaintiffs allege that this Court has subject matter jurisdiction over the claims asserted against DuPont under Section 44(h) of the Lanham Act, 15 U.S.C. § 1126(h), and

Articles 1, 2 and 10*bis* of the Paris Convention for the Protection of Industrial Property ("Paris Convention"), 21 U.S.T. 1583.[5]  Plaintiffs allege in their complaint that:

> The combined effect of these statutory and treaty provisions "is to provide a federal forum to which [INVISTA] can pursue its state law claims."  *Toho Co. v. Sears, Roebuck & Co.*, 645 F.2d 788, 793 (9th Cir. 1981); *BP Chemicals, Ltd. v. Formosa Chemical & Fibre Corporation*, No. 97-CV-4554, at 24, n. 23 (D.N.J. May 14, 1998).  (Comp. ¶ 27).

As demonstrated below, not only did the Second Circuit hold directly to the contrary in *Empresa Cubana del Tabaco v. Culbro Corp.*, 399 F.3d 462 (2d Cir. 2005) – a decision plaintiffs fail to cite in their complaint – but the Ninth Circuit's *Toho* decision, which plaintiffs *do* cite, has been superseded by later Ninth Circuit decisions, and, in any event, is distinguishable.

Section 44(b) of the Lanham Act, enacted over sixty years ago, provides that persons "whose country of origin" is a party to the Paris Convention "shall be entitled to the benefits" of Section 44 "under the conditions expressed herein to the extent necessary to give effect to any provision of such convention. . . ."[6]  Section 44(h), the provision under which plaintiffs seek relief here, provides that such persons "shall be entitled to effective protection against unfair

---

[5]    Plaintiffs do not allege diversity jurisdiction.  Nor could they, as there are foreign plaintiffs and foreign defendants.  28 U.S.C. §§ 1332(2)-(3).  *See, e.g., Grupo Dataflux v. Atlas Global Group, L.P.*, 541 U.S. 567, 569 (2004); *Universal Licensing Corp. v. Paola del Lungo S.p.A.*, 293 F.3d 579, 580-81 (2d Cir. 2002).  It is also not clear that all the proper parties based on the alleged contracts have been joined in this action.

[6]    The full text of Section 44(b) is:  "Any person whose country of origin is a party to any convention or treaty relating to trademarks, trade or commercial names, or the repression of unfair competition, to which the United States is also a party, or extends reciprocal rights to nationals of the United States by law, shall be entitled to the benefits of this Section under the conditions expressed herein to the extent necessary to give effect to any provision of such convention, treaty or reciprocal law, in addition to the rights to which any owner of a mark is otherwise entitled by this chapter."  15 U.S.C. § 1126(b).

competition, and the remedies provided in this chapter for infringement of marks shall be available so far as they may be appropriate in repressing acts of unfair competition."  15 U.S.C. § 1126(h) (emphasis added).

In *Empresa*, the Second Circuit held that Section 44 does not create any "substantive rights" other than those "independently provided" in the Lanham Act and that all it does is require "national treatment." *Empresa*, 399 F.3d at 484-85 (quoting *Int'l Café, S.A.L. v. Hard Rock Café Int'l (U.S.A.), Inc.*, 252 F.3d 1274, 1277-78 (11th Cir. 2001) (affirming dismissal of claim under 44(h) and Paris Convention for lack of subject matter jurisdiction)).  "National treatment," the Second Circuit stated, "means that 'foreign nationals should be given the same treatment in each of the member countries as that country makes available to its own citizens.'"  *Id.* at 485.  Thus, "'Section 44 of the Lanham Act gives foreign nationals the same rights and protections provided to United States citizens by the Lanham Act,'" *i.e.*, that nationals of countries who signed the Paris Convention be accorded the same rights that Americans have under the Lanham Act.  *Id.*  What this means, the Second Circuit held, consistent with Article 2 of the Convention, is that foreign nationals "'may seek protection in United States courts for violations of the Lanham Act,'" but that the Paris Convention "*creates no new cause of action for unfair competition. Any cause of action based on unfair competition must be grounded in the substantive provisions of the Lanham Act*.'"  *Id.* (emphasis added).[7]  In short, "[t]he Paris Convention requires that 'foreign nationals . . . be given the same treatment in each of the member countries *as that*

---

[7]    Article 2 of the Paris Convention provides:  "Nationals of any country [that is a signatory to the Convention] shall . . . enjoy in all of the other countries [that are signatories] the advantages that their respective laws now grant, or may hereafter grant, to nationals; all without prejudice to the rights specially provided for by this Convention.  Consequently, they shall have the same protection as the latter, and the same legal remedy against any infringement of their rights, provided that the conditions and formalities imposed upon nationals are complied with."

*country makes available to its own citizens*.'"  *Id.* at 484 (quoting *Vanity Fair Mills v. T. Eaton Co.*, 234 F.2d 633, 640 (2d Cir. 1956)) (emphasis added).  *Accord, ITC Ltd. v. Punchgini, Inc.*, 482 F.3d 135, 162 (2d Cir. 2007).

Applying this clear law, the Second Circuit, in affirming dismissal in *Empresa*, held that the plaintiff "cannot maintain a separate claim for unfair competition under Article 10*bis* and Sections 44(b) and (h)."  *Empresa*, 399 F.3d at 485.[8]  "Rather, a claim for unfair competition must be brought under Section 43(a) or state law."  *Id.*  Because plaintiffs in *Empresa* – unlike the plaintiffs here – had alleged a separate and independent basis for federal Lanham Act jurisdiction (trademark infringement under Section 43(a), 15 U.S.C. § 1125(a)) the Court had supplemental jurisdiction over the state law unfair competition claims and, therefore, the Court

---

[8]    Article 10*bis* provides:

(1)    The countries of the Union are bound to assure to nationals of such countries effective protection against unfair competition.

(2)    Any act of competition contrary to honest practices in industrial or commercial matters constitutes an act of unfair competition.

(3)    The following in particular shall be prohibited:

1.    all acts of such a nature as to create confusion by any means whatever with the establishment, the goods, or the industrial or commercial activities, of a competitor;

2.    false allegations in the course of trade of such a nature as to discredit the establishment, the goods, or the industrial or commercial activities, of a competitor;

3.    indications or allegations the use of which in the course of trade is liable to mislead the public as to the nature, the manufacturing process, the characteristics, the suitability for their purpose, or the quantity, of the goods.  (21 U.S.T. at 1648).

addressed the state law claims and affirmed their dismissal as a matter of state law.  *Id.* at 485-86.[9]

It is well established that Section 43(a) of the Lanham Act is limited to common law trademark infringement (false designation of origin) or the tort of passing off and claims for false advertising, and does not encompass claims for misappropriation of a trade secret.  *See, e.g., Empresa*, 399 F.3d at 478.  If the law were contrary to what the Second Circuit held in *Empresa* – if, as plaintiffs argue, Section 44(h) and the Paris Convention provide a general right of unfair competition to foreign nationals – then that would make irrelevant the limitations of Section 43(a) of the Lanham Act.  That statute, as the Supreme Court recently and unanimously reiterated, "'does not have boundless application as a remedy for unfair trade practices'" and, "'because of its inherently limited wording, . . . can *never* be a federal 'codification' of the over-all law of 'unfair competition.'"  *Dastar Corp. v. Twentieth Century Fox Film Corp.*, 539 U.S. 23, 29 (2003) (quoting *Alfred Dunhill, Ltd. v. Interstate Cigar Co.*, 499 F.2d 232, 237 (2d Cir. 1974), and 4 J. McCarthy, Trademarks & Unfair Competition § 27:7, p. 27-14 (4th ed. 2002)) (emphasis added).  Indeed, over thirty years ago, the Second Circuit explained that:

> although § 43(a) was intended to create a federal unfair competition count, since "the Lanham Act was not intended to bring all unfair competition in commerce within federal jurisdiction," *it was intended to be a special, limited one covering only those cases in which false description and/or false designation of origin are alleged* . . . .Congress deliberately excluded from [the Act's] coverage virtually all categories of unfair competition but for false advertising.

*Colligan v. Activities Club of N.Y.*, Ltd., 442 F.2d 686, 692-93 (2d Cir. 1971) (quoting *L'Aiglon Apparel v. Lana Lobell, Inc.*, 214 F.2d 649, 654 (3d Cir. 1954)) (emphasis added).[10]

---

[9]    *Empresa*, 399 F.3d at 464; *see* 15 U.S.C. § 1521; 28 U.S.C. §§ 1331, 1338(b), 1367.  In addition, there appeared to have been complete diversity between the parties.  *Empresa*, 399 F.3d at 464.

Section 44(i) of the Lanham Act provides that "[c]itizens or residents of the United States shall have the same benefits as are granted by this Section to persons described in subsection (b) of this section."  15 U.S.C. § 1126(i).  Accordingly, if, as plaintiffs argue, Section 44(h) provides to foreigners a general cause of action for unfair competition, including for theft of trade secrets, then Section 44(i) would provide the "same" right to Americans.  *Id.*  This would be directly contrary to the Supreme Court's holding in *Dastar*, and the Second Circuit's holdings in *Alfred Dunhill* and *Colligan*, and would transform Section 43(a), contrary to its express language, from a limited proscription on false designation of origin and false advertising into a general prohibition of unfair competition.  Such a result would upend sixty years of interpretation of the Lanham Act and, simply put, is not the law.

Consistent with *Empresa*, two district courts dismissed state law misappropriation of trade secret claims under Section 44 of the Lanham Act and the Paris Convention, just as plaintiffs allege here.  *BP Chems. Ltd. v. Jiangsu Sopo Corp.*, 429 F. Supp.2d 1179 (E.D. Mo.

---

10      Section 43(a)(1), 15 U.S.C. § 1125(a)(1), provides, in relevant part:

Any person who, on or in connection with any goods or services, or any container for goods, uses in commerce any word, term, name, symbol, or device, or any combination thereof, or any false designation of origin . . . which

      (A)      *is likely to cause confusion, or to cause mistake, or to deceive* as to the affiliation, connection, or association of such person with another person, or as to the origin, sponsorship, or approval of his or her goods, services, or commercial activities by another person, or

      (B)      in *commercial advertising or promotion*, misrepresents the nature, characteristics, qualities, or geographic origin of his or her or another person's goods, services, or commercial activities,

shall be liable in a civil action by any person who believes that he or she is or is likely to be damaged by such act.  (emphasis added).

2006); *BP Chems. Ltd. v. Yankuang Group Boyang Foreign Economic & Trade Co.*, No. CV 03-08167 PA (JTLx), Slip Op. (C.D. Cal. Mar. 23, 2004) (attached hereto as Exhibit A).  In *BP Chems. v. Jiangsu Sopo*, the court held that Section 43(a) is limited to false designation of origin and false advertising and provides no cause of action for trade secret misappropriation.  429 F. Supp.2d at 1186, 1189.  Nor, the court held, could any such claim be asserted under Section 44 and the Paris Convention:  "The Paris Convention forbids national discrimination, but it does not give foreign nationals or those suing them greater rights than domestic litigants have."  *Id.* at 1189 (emphasis added).  In particular, it held that neither the Lanham Act nor the Paris Convention, neither of which "makes any reference to state law," creates a federal cause of action or federal forum for a plaintiff to assert a state law claim of misappropriation of trade secrets.  *Id.*

Similarly, in *BP Chems. Ltd. v. Yankuang Group*, the court dismissed for lack of subject matter jurisdiction the plaintiff's state law trade secret claim on the grounds that the Lanham Act does not proscribe misappropriation of trade secrets and that the Paris Convention "does not provide substantive rights but ensures 'national treatment.'  That is, it requires that 'foreign nationals . . . be given the same treatment in each of the member countries as that country makes available to its own citizens.'"  (Ex. A p. 5) (quoting *Mattel, Inc. v. MCA Records, Inc.*, 296 F.3d 894, 908 (9th Cir. 2002), and *Vanity Fair*, 234 F.2d at 640)).  Thus, "[b]ecause an American citizen cannot obtain a federal forum for state claims absent an independent basis for federal jurisdiction, an alien cannot either."  (*Id.* at 6).  Accordingly, because the plaintiff – unlike, for example, the plaintiff in *Empresa* – had failed to assert any federal claim based on which the court could assert supplemental jurisdiction, and there being no diversity jurisdiction, the court dismissed plaintiff's state law misappropriation of trade secret claim for lack of subject matter jurisdiction.  (*Id.* at 8).

Ignoring this controlling Second Circuit and other precedent, plaintiffs rely in their complaint on two cases to support their allegation of federal jurisdiction. (Comp. ¶ 27 (citing *Toho Co. v. Sears, Roebuck & Co.*, 645 F.2d 788 (9th Cir. 1981), and *BP Chems., Ltd. v. Formosa Chem. & Fibre Corp.*, No. 97-CV-4554 (D.N.J. May 14, 1998) (attached hereto as Exhibit B)). Neither is a Second Circuit case and, thus, neither has any precedential effect, let alone supersedes the Second Circuit's later decision in *Empresa*. In all events, they are distinguishable.

In *Toho*, unlike here, the Ninth Circuit was not faced with a trade secret misappropriation claim under the Paris Convention. Rather, the issue before it was whether plaintiff, who had brought a Section 43(a) Lanham Act claim for false designation of origin alleging that defendant's use of a likeness of plaintiff's Godzilla movie character was likely to cause confusion, could also assert, pursuant to Section 44(h) and the United States' Treaty of Friendship, Cooperation and Navigation with Japan, a state law unfair competition claim. *Toho*, 645 F.2d at 790-93. The Ninth Circuit held that plaintiff could pursue state law claims under Section 44(h), and affirmed dismissal of the state law claims. *Id.* at 791-94. As the court explained in *BP Chems., Ltd. v. Yankuang Group Boyang Foreign Economic Trade Co.* (Ex. A p. 6), plaintiff in *Toho* had alleged claims of trademark infringement under Section 43(a), which presented a separate basis for federal jurisdiction over the state law claims under 28 U.S.C. §§ 1338(b) and 1367.

Contrary to plaintiffs' reliance on *Toho* here, neither *Toho* nor subsequent Ninth Circuit decisions have held that the Paris Convention confers substantive rights or otherwise operates to create a federal cause of action for unfair competition under Section 44. *Grupo Gigante SA De CV v. Dallo & Co.*, 391 F.3d 1088, 1100 (9th Cir. 2004); *Mattel*, 296 F.3d at 908. Indeed, the Second Circuit in *Empresa* quoted one of these Ninth Circuit cases for its holding

that "the Paris Convention provides for national treatment, and does *not* define the substantive law of unfair competition." *Empresa*, 399 F.3d at 484 (quoting *Mattel*, 296 F.3d at 908) (emphasis added). Similarly, in *Grupo Gigante*, the Ninth Circuit held, quoting, *inter alia*, the Second Circuit's decision in *Vanity Fair*, that "Article 10*bis* itself does *not* create additional substantive rights. Rather, '[t]he Paris Convention ensures that 'foreign nationals should be given *the same treatment* in each of the member countries as that country makes available to its own citizens' as to trademark and related rights.'" *Grupo Gigante*, 391 F.3d at 1099-1100 (quoting *Int'l Café*, 252 F.3d at 1277 (quoting *Vanity Fair*, 234 F.2d at 640)) (emphasis added).[11] Thus, under Ninth Circuit law, as under Second Circuit law, because an American citizen cannot obtain a federal forum for state law claims of trade secret misappropriation absent an independent basis for federal jurisdiction, a foreign company cannot either. Indeed, were the law to the contrary, and an American citizen could bring a state law misappropriation claim in federal court under

---

[11]    *See also Grupo Gigante*, 391 F.3d at 1100 (quoting, *Mattel*, 296 F.3d at 908):

> [T]he interaction between § 44 of the Lanham Act and Article 10bis of the Paris Convention simply results in equal treatment of foreign and domestic parties in trademark disputes:
>
> > "A foreign national is entitled to the same 'effective protection against unfair competition' to which an American is entitled, Paris Convention, art. 10bis, and in turn, the American gets the same right that the foreign national gets. . . . *But [a party] has no claim to a nonexistent federal cause of action for unfair competition.* As said, the Paris Convention provides for national treatment, and *does not define the substantive law of unfair competition*." (emphasis added).

*Accord, Scotch Whisky Ass'n v. Majestic Distilling Co*., 958 F.2d 594, 597-98 (4th Cir. 1992) ("SWA argues that the rights conferred by the Paris Union Convention exceed those conferred by the Lanham Act. We disagree. . . . [I]f there is no likelihood of confusion as to the origin of Majestic's products, SWA has no cause of action for unfair competition."); *Int'l Café*, 252 F.3d at 1277-78 (Section 44 does not create any "substantive rights" other than those "independently provided" in the Lanham Act ).

Section 43(a) of the Lanham Act without any independent basis for federal jurisdiction, there would have been no reason for Congress to have provided in 28 U.S.C. § 1338(b) for original federal jurisdiction in "any civil action asserting a claim of unfair competition when joined with a substantial and related claim under the copyright, patent, plant variety protection or trademark laws." In short, under plaintiffs' interpretation of Section 44(h), Section 1338(b) would be rendered superfluous even though this provision was passed *after* enactment of Section 44(h) of the Lanham Act. Pub. L. 773, 62 Stat. 931 (June 25, 1948); Pub. L. 489, 60 Stat. 441 (July 5, 1946).

The other case plaintiffs cite in their complaint, *BP Chems., Ltd. v. Formosa Chem. & Fibre Corp.* (Ex. B), is a district court case from New Jersey. Its sole reference to the Section 44(h) issue is relegated to a footnote where, *quoting the plaintiff's complaint*, it makes the conclusory statement that the "plaintiff's claims arise under 'the combination of Section 44 of the Lanham Act and the Paris Convention' . . . [and that] under these provisions [the plaintiff] enjoys a federal right to sue for acts of unfair competition and to invoke state law rights and remedies in pursuing a federal cause of action in federal court." (Ex. B p. 24 n.23). The court fails to provide any legal analysis; nor does it cite any cases to support its conclusion.[12]

Here, the only basis for plaintiffs' claim under 44(h) is their claim for misappropriation of trade secrets. Because, as the Second Circuit held in *Empresa*, Section 44(h) provides a claim for relief to foreign nationals *only* to the extent that a domestic entity would have a claim under the Lanham Act, and because Section 43(a) of the Lanham Act does not provide a claim

---

[12]     On appeal, the Third Circuit ordered the claims against the non-resident defendant dismissed for lack of personal jurisdiction. 229 F.3d 254, 258-63 (3d Cir. 2000). Accordingly, the Court found it "unnecessary to decide whether BP's claim against it arises under federal law and, if so, whether it states a claim against FCFC upon which relief could be granted." *Id.* at 259 n.1

for relief for misappropriation of trade secrets to domestic entities, Section 44(h) does not provide plaintiffs a basis to assert their misappropriation claim in a federal forum.

**B.    The Lanham Act Has No Extraterritorial Application to
       Foreign Conduct that Has No Substantial Effect on U.S. Commerce**

Even if, contrary to *Empresa* and other Second Circuit precedent, Section 44(h) of the Lanham Act encompassed plaintiffs' claim against DuPont, this Court still would not have subject matter jurisdiction over the claim because the Lanham Act does not apply extraterritorially to the conduct plaintiffs allege here.  As the Supreme Court has ruled, Congress is presumed to have intended its statutes to have domestic, not extraterritorial application.  *Small v. United States*, 544 U.S. 385, 388-89 (2005) (citing *Foley Bros. v. Filardo*, 336 U.S. 281 (1949) (unless a contrary intent appears, an act of Congress applies only within the territorial jurisdiction of the United States)).  The Lanham Act is no exception; it is "inconceivable that Congress meant . . . to extend to all eligible foreign nationals a remedy in the United States against unfair competition occurring in their own countries."  *Vanity Fair Mills, Inc. v. The T. Eaton Co.*, 234 F.2d 633, 644 (2d Cir. 1956).

The Second Circuit has made clear that for foreign conduct to violate the Lanham Act and be actionable in this country, it must have "a substantial effect on United States commerce."  *Atlantic Richfield Co. v. Arco Globus Int'l Co.*, 150 F.3d 189, 192-93 & n.4 (2d Cir. 1998) (citing *Vanity Fair*, 234 F.2d at 642).  In *Vanity Fair*, the Court affirmed dismissal of a Lanham Act claim for lack of jurisdiction where the claim was based on the defendant's use in Canada of the same trademark for which plaintiff owned an American registration.  Because the defendant was a United States citizen, and because the alleged acts of infringement occurred in Canada, the Court found that there was no Lanham Act jurisdiction.  *Vanity Fair*, 234 F.2d at 638, 642-43.  The Court created a three-factor test to determine the extraterritorial reach of the

17

Lanham Act: (1) whether the defendant was a United States citizen, (2) whether the defendant's conduct had a substantial effect on United States commerce, and (3) whether there was a conflict with trademark rights established under foreign law. *Id.* at 642-43. *Accord, Totalplan Corp. of America v. Colborne*, 14 F.3d 824, 830 (2d Cir. 1994); *Atlantic Richfield*, 150 F.3d at 192. In short, as the Second Circuit has explained, "the rights and liabilities of United States citizens who compete with foreign nationals in their home countries are ordinarily to be determined by the appropriate foreign law." *Vanity Fair,* 234 F.2d at 639.

Time and again, the Second Circuit and other courts have applied *Vanity Fair* to dismiss Lanham Act claims where the claims did not allege a substantial effect on domestic commerce. Indeed, in *Atlantic Richfield* the Second Circuit held that, regardless of the presence of the other two *Vanity Fair* factors, a "substantial effect" on United States commerce is essential to application of the Lanham Act. *Atlantic Richfield*, 150 F.3d at 192. In particular, at issue were infringing activities, "all of which took place in foreign nations," and there was "no evidence that domestic consumers have been misled or have come to view the ARCO mark less favorably as a result of those foreign activities." 150 F.3d at 192. As the court stated, "we have never applied the Lanham Act to extraterritorial conduct absent a substantial effect on United States commerce." *Id.* at 192 n.4. Likewise, the Second Circuit has held that the distribution of cameras with an allegedly infringing trademark from the United States to Japan by Canadian defendants was not within the reach of the Lanham Act where the sales in Japan would not have "a substantial effect on United States commerce." *Totalplan Corp. of Am. v. Colborne*, 14 F.3d 824, 829-31 (2d Cir. 1994). *Accord, Int'l Café*, 252 F.3d at 1278-79 (affirming dismissal of Lanham Act claim and applying *Vanity Fair* where the only alleged domestic effect of infringing foreign conduct was "financial gain from royalties" for sales abroad); *World Book, Inc. v. Int'l Bus. Mach.*

*Corp.*, 354 F. Supp.2d 451, 452-54 (S.D.N.Y. 2005) (dismissing Lanham Act claim under *Vanity Fair* where American defendant authorized foreign subsidiary to make unauthorized distribution of infringing products in United Kingdom); *Am. White Cross Labs., Inc. v. H.M. Cote, Inc.*, 556 F. Supp. 753, 755-58 (S.D.N.Y. 1983) (dismissing Lanham Act claim under *Vanity Fair* where defendant Canadians allegedly committed acts of trademark infringement in Canada).

Here, the complaint alleges that plaintiffs and defendant Rhodia, the alleged appropriator of the purported trade secrets, are foreign parties. Plaintiffs also make no allegation that anything DuPont did in allegedly misappropriating their purported trade secrets had, or will have, any impact on domestic commerce, let alone a substantial effect on such commerce. To the contrary, plaintiffs allege that Rhodia, a foreign company, will use the alleged trade secrets for a plant to be constructed in China to meet "demand" in "Asia." (Comp. ¶¶ 5, 7, 9, 12, 16, 67-76). Moreover, an essential element of plaintiffs' claim is that plaintiffs prove that the alleged trade secrets are, in fact, trade secrets – an issue that, as shown by Rhodia in its motion to dismiss or stay this case, is currently being litigated in an arbitration in France. Just as a United States court should not sit in judgment as to the scope and validity of trademark rights overseas that are being litigated in foreign courts, so too a United States court should not sit in judgment on trade secret rights currently being litigated in an arbitration in France. To do so risks the possibility that a ruling of this Court will be inconsistent with the ruling of the French arbitration panel. *See Vanity Fair*, 234 F.2d at 639; *Int'l Café*, 252 F.3d at 1279; *Am. White*, 556 F. Supp. at 757-58.[13]

---

[13]    To distract the Court, plaintiffs allege that – prior to any purportedly unlawful transfer of information from Rhodia employees to Rhodia itself – these Rhodia employees *lawfully obtained* some of their know-how under the joint venture agreement in the United States. (Comp. ¶¶ 22, 26, 31, 42, 50-52). But this is irrelevant. There is no allegation that any misappropriation

(continued...)

In sum, the Lanham Act does not grant to this U.S. Court the jurisdiction to determine on behalf of foreign plaintiffs the rights and liabilities under trade secret law of a French company and an American company with respect to a planned development of a plant in China, the product of which, plaintiffs allege, will be sold in Asia.

## C.     The Court Does Not Have Supplemental Jurisdiction Under 28 U.S.C. § 1367 of the Claims Asserted Against DuPont

28 U.S.C. § 1367(a) provides, in pertinent part, that a district court may exercise supplemental jurisdiction over state law claims "in any civil action of which the district courts have original jurisdiction." There is no basis for this Court to assert supplemental jurisdiction here where, at the outset of this case, it is clear that there is no federal jurisdiction over the only claim over which plaintiffs assert there is original federal jurisdiction. *See, e.g., Cave v. East Meadow Union Free School Dist.*, 514 F.3d 240, 250 (2d Cir. 2008) (ordering dismissal of state law claims after holding that court lacked subject matter jurisdiction over federal claims); *First Capital Asset Mgmt., Inc. v. Satinwood, Inc.*, 385 F.3d 159, 182-83 (2d Cir. 2004) (affirming dismissal of state law claims given affirmance of dismissal of federal claims for failure to state a claim for relief); *Williams v. Citibank, N.A.*, 2008 WL 2757079 (S.D.N.Y. July 17, 2008) (same). *See also United Mine Workers of Am. v. Gibbs*, 383 U.S. 715, 726 (1966) ("Certainly, if the federal claims are dismissed before trial, . . . the state claims should be dismissed as well.").

Nor is there any basis here to assert supplemental jurisdiction under 28 U.S.C. § 1367(a) based on the claims asserted against Rhodia, the other defendant. As Rhodia explains in its motion, the only federal claims asserted against Rhodia – under Sections 43(a) and 44(h) of

---

occurred in the United States, let alone that any misappropriation had a substantial effect on United States commerce.

20

the Lanham Act – fail to state a claim for relief; and the Court lacks diversity jurisdiction over

plaintiffs' other claims against Rhodia.

## **CONCLUSION**

For the foregoing reasons, plaintiffs' claims against DuPont and the complaint

should be dismissed in their entirety.

Dated:  September 22, 2008
New York, NY

KAYE SCHOLER LLP

By      */s/ Thomas F. Fleming*
Thomas F. Fleming (TF-5044)
Thomas A. Smart (TS-1633)
425 Park Avenue
New York, NY  10025
Tel. (212) 836-8000
Fax (212) 836-8689

Robert J. Dwyer (RD-6457)
Alanna C. Rutherford (AR-0497)
BOIES, SCHILLER & FLEXNER LLP
575 Lexington Avenue
7th Floor
New York, New York  10022
Tel. (212) 446-2300
Fax (212) 446-2350

*Attorneys for Defendant*
*E.I. DuPont de Nemours and Company*

### **CERTIFICATE OF SERVICE**

I hereby certify that this document filed through the ECF system will be sent electronically to the registered participants as identified on the Notice of Electronic Filing (NEF) and paper copies will be sent to those indicated as non registered participants on the above date.

/s/  *Thomas F. Fleming*
Thomas F. Fleming